IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 28, 2004 Session

# DON SMITH FORD, LINCOLN-MERCURY, INC. v. DOUG BOLINGER, ET AL.

**Appeal from the Circuit Court for Greene County**
**No. 02CV201     Ben K. Wexler, Judge**

### No. E2003-02764-COA-R3-CV - FILED MARCH 29, 2005

Don Smith Ford, Lincoln-Mercury, Inc. sued Doug Bolinger based upon theories of negligent misrepresentation, breach of contract and violations of the Tennessee Consumer Protection Act ("the TCPA"). The plaintiff averred that the defendant failed to disclose substantial body damage to his vehicle, which vehicle the defendant traded to the plaintiff in connection with his purchase from the plaintiff of a new Ford Explorer. The defendant denied the plaintiff's allegations and filed a third-party complaint against previous owners of the vehicle, Gary Hoese, dba Gary's Used Cars ("Hoese") and East Gate Motors, Inc. ("East Gate"). The defendant's third-party complaint is based upon alleged common law violations and upon the theory that Hoese and East Gate violated the TCPA in failing to disclose the condition of the vehicle's title. The trial court found that the defendant was liable to the plaintiff for negligently misrepresenting the condition of the vehicle and awarded it damages in the amount of $17,085. In addition, the trial court dismissed the defendant's third-party claims against Hoese and East Gate and, without stating the basis of its action, awarded attorney's fees to them, as well as to the plaintiff. The defendant appeals, arguing, *inter alia*, that the trial court erred in finding him liable for negligent misrepresentation; that the trial court erred in failing to hold Hoese and East Gate liable to the defendant; and that the trial court's awards of attorney's fees was improper. We vacate the trial court's fee awards to the plaintiff, Hoese, and East Gate pending further proceedings in the trial court. The balance of the trial court's judgment is affirmed.

#### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
#### Vacated in Part and Affirmed in Part; Case Remanded with Instructions

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Mark D. Edmonds, Jonesborough, Tennessee, for the appellant, Doug Bolinger.

E. Ronald Chesnut, Greeneville, Tennessee, for the appellee, Don Smith Ford, Lincoln-Mercury, Inc.

Thomas L. Kilday and Deborah F. Roberts, Greeneville, Tennessee, for the appellee, Gary Hoese, dba Gary's Used Cars.

Jerry W. Laughlin, Greeneville, Tennessee, for the appellee, East Gate Motors, Inc.

**OPINION**

I.

On November 3, 1996, Brooks Excavating & Construction ("Brooks") purchased a new 1997 Ford Explorer ("the vehicle") from Ted Russell Ford in Knoxville. Sometime after the purchase, the vehicle was wrecked, sustaining damage to the exterior of the vehicle. Significantly, the top of the vehicle was partially removed at the site of the wreck in order to extract an occupant who was trapped inside.

Brooks later sold the vehicle in its wrecked condition to Hoese. Brooks' original certificate of title was assigned to Hoese on March 22, 1999. Without making any repairs to the vehicle, Hoese sold it to East Gate two weeks later, again assigning the original certificate of title. East Gate had the vehicle repaired, and on May 12, 2000, sold the vehicle to the defendant for $18,620. Once again, the original certificate of title was assigned, this time from East Gate to the defendant.

At the time of the sale, East Gate gave the defendant a "Buyers Guide," which indicated that the vehicle was being sold "as is" with no warranty. The Buyers Guide, signed by East Gate's owner, Max Cox, states as follows:

> Vehicle has had damage to front spoiler, rt. spindle[,] top was cut and lifted up to remove passenger – car was drivable [sic] and no parts were straighted [sic] – vehicle was completly [sic] repainted – /s/ Max L. Cox

The sale to the defendant was consummated on May 12, 2000. At that time, the defendant signed the Buyers Guide, acknowledging his receipt of same. Later, on June 26, 2000, a new certificate of title was issued by the state, indicating that the vehicle was a "rebuilt vehicle." The certificate was not mailed to the defendant; it apparently was mailed to a lienor.

On September 22, 2001, the defendant purchased a new 2001 Ford Explorer from the plaintiff. The defendant traded in the vehicle, for which the plaintiff gave him a trade-in allowance of $11,500. At the time of the sale, the defendant executed a damage disclosure statement, which asked the following questions[1] of the defendant:

---

[1]The statement contains other questions that are not material to the issues before us.

> Has this vehicle been damaged by collision or other occurence [sic] to the extent that damages exceed 25% of its value at the time of the collision or other occurence [sic]?
>
> * * *
>
> Has this vehicle been reconstructed?

(Numbering in original omitted). In response to these two questions, the defendant checked the "No" box. The defendant signed the damage disclosure statement, declaring that "the above information is true to the best of my knowledge." The defendant did not supply the plaintiff with a copy of the Buyers Guide which he had received from East Gate, nor did he inform the plaintiff of the damage to the vehicle or the repairs that East Gate had undertaken.

When the plaintiff received the certificate of title on the vehicle, it discovered, for the first time, that the vehicle had been labeled a "rebuilt vehicle." Because the value of a vehicle whose title is so branded is significantly less than without the brand, the plaintiff contacted the defendant and requested that he agree to rescind the sale and repurchase the vehicle from the plaintiff. The defendant initially indicated to the plaintiff that he would repurchase the vehicle, but he later refused to do so.

On March 15, 2002, the plaintiff filed suit against the defendant based upon theories of misrepresentation, breach of contract, and violations of the TCPA. The defendant answered the complaint on June 27, 2002, generally denying all of the plaintiff's allegations. In addition, the defendant filed a third-party complaint against Hoese and East Gate, alleging that the two parties were aware the vehicle was considered a rebuilt vehicle and yet had failed to disclose this information to the defendant. This failure to disclose, according to the defendant, violated the common law and the TCPA. East Gate answered the third-party complaint, as did Hoese; both denied legal culpability. Hoese also filed a counterclaim for attorney's fees, based upon the TCPA.

The case proceeded to a bench trial. The court took the case under advisement and then later filed its opinion. With respect to Hoese, the trial court found that he sold the vehicle in its wrecked condition to East Gate; that Hoese never discussed the vehicle with the defendant; and that the new certificate of title indicating that the vehicle had been rebuilt was issued by the state more than a year after the Hoese/East Gate transaction. The court found that Hoese "had no way to know in April 1999, that the State of Tennessee, in its Certificate of Title dated May 12, 2000, was going to show or list this vehicle as a rebuilt vehicle." The court then dismissed the claim against Hoese.

As to East Gate, the trial court found that the new certificate of title was issued to the defendant 44 days after East Gate sold the vehicle to the defendant. As with Hoese, the court opined that East Gate did not know how the vehicle would be classified, title-wise, *after* it sold the vehicle to the defendant. The court further found that East Gate had given the defendant a Buyers Guide, showing the damage to the vehicle. The court dismissed the claim against East Gate as well.

-3-

Finally, with respect to the plaintiff, the court found that the defendant did not provide the plaintiff with the Buyers Guide, nor did he tell the plaintiff that East Gate had furnished him with a Buyers Guide when he purchased the vehicle. The court went on to state the following:

> [The defendant] was asked [in the damage disclosure statement], has the vehicle been reconstructed? His answer was "no." He must have known after receiving the Buyers Guide from [East Gate] that this vehicle had been reconstructed, anyway the State of Tennessee listed it as being a rebuilt vehicle.

The court then held that the plaintiff was entitled to damages in the amount of $11,500, representing the amount allowed on the trade-in of the vehicle; $4,050 in parking fees; and floor plan interest of $1,535. The court also awarded attorney's fees to the plaintiff and each of the two counter-defendants.

Following the filing of the court's opinion, the plaintiff, Hoese, and East Gate all submitted motions and affidavits for attorney's fees. On October 10, 2003, the trial court entered its final judgment, incorporating the findings from its earlier-filed opinion, and granting attorney's fees in the following amounts: $4,708.75 to the plaintiff; $2,711.75 to Hoese; and $2,642.50 to East Gate.

From this judgment, the defendant appeals.

## II.

We review this non-jury case *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness that we must honor "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are accorded no such presumption. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).

## III.

The defendant raises the following five issues on appeal:

> 1. Did the trial court err in holding the defendant liable to the plaintiff for negligent or reckless misrepresentation?
>
> 2. Did the trial court err in holding the defendant liable to the plaintiff for breach of contract?
>
> 3. If the defendant is found to be liable to the plaintiff, should the trial court have reduced the amount of the judgment awarded to the plaintiff for its failure to mitigate damages?

4. If the defendant is liable to the plaintiff for failing to discover the condition of the title, then did the trial court err in failing to find Hoese and East Gate liable for failing to disclose the condition of the title to the defendant under the TCPA?

5. Did the trial court err in awarding attorney's fees to the plaintiff, Hoese and East Gate without specifically finding a violation of the TCPA?

## IV.

### A.

The defendant first contends that the trial court erred in holding him liable to the plaintiff on the basis of negligent or reckless misrepresentation. We disagree.

In order to prevail on a claim of negligent misrepresentation, a plaintiff must establish the following:

(1) the defendant supplied information to the plaintiff; (2) the information was false; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied on the information.

*Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991) (citation omitted).

The alleged negligent misrepresentations in the instant case relate to the first and fifth questions asked of the defendant in the damage disclosure statement. The first question asked the defendant whether the vehicle had been damaged by collision or otherwise "to the extent that damages exceed[ed] 25% of its value at the time of the collision." The fifth question asked the defendant whether the vehicle had been reconstructed. The defendant answered "no" to both questions. While there is no evidence that the defendant was aware that the state had branded the vehicle a "rebuilt vehicle" until he was so informed by the plaintiff – as the new certificate of title apparently went directly from the state to the credit company financing the defendant's car loan – there is no doubt that the defendant was aware of the prior damage to the vehicle and the repairs made to the vehicle by East Gate.

We turn first to the alleged misrepresentation of the defendant in answering "no" to the first question on the damage disclosure statement. While the trial court did not refer to the defendant's response to this question in finding the defendant liable to the plaintiff, the parties have addressed it on appeal, necessitating our review of this question and the defendant's answer. As we have previously stated, the defendant was undoubtedly aware that the vehicle had undergone fairly significant repairs. However, there is no evidence that the defendant knew or, in the exercise of

reasonable care, should have known that the damages caused by the wreck exceeded 25% of the value of the vehicle. We hold that the evidence preponderates against a finding that the defendant made a negligent misrepresentation to the plaintiff when he responded in the negative to this question.

Turning to the alleged misrepresentation embodied in the defendant's response to the second question, however, we reach a different conclusion. The defendant knew, based upon the Buyers Guide he received from East Gate, that the vehicle had sustained the following damage: damage to the front spoiler and right spindle; damage to the roof of the vehicle, as it had been cut away and lifted up in order to extract an occupant; and damage to the paint, as the entire vehicle had been repainted. In spite of this knowledge, the defendant did not provide the plaintiff with a copy of the Buyers Guide, nor did he inform the plaintiff of the extent of the damage to the vehicle prior to his purchase of it.[2] The defendant claims that he understood the word "reconstructed" to mean "totaled" and that, as the vehicle, in his judgment, had not been totaled, he was correct in responding that the vehicle had not been reconstructed. However, in our view, a reasonable person possessed of the same knowledge as the defendant with respect to the damage and repairs to the vehicle would have responded to the question involving the vehicle's reconstruction by divulging the information in his possession rather than by simply responding "no" to the question. We believe the defendant did supply false information to the plaintiff with his unqualified "no" answer; that he did not exercise reasonable care in relaying this information; and that the plaintiff relied on this information to its detriment. *See Atkins*, 823 S.W.2d at 552. As such, we find that the evidence does not preponderate against the trial court's finding that the defendant is liable to the plaintiff on the basis of negligent misrepresentation as to the defendant's response to the second of the two questions. Accordingly, we affirm the trial court's award to the plaintiff of $11,500 in damages, $4,050 in parking fees, and $1,535 in floor plan interest.

B.

The defendant next asserts that the trial court erred in finding him liable to the plaintiff on the basis of a breach of contract theory. In light of our previous holding, we find it unnecessary to discuss this issue in detail. The trial court did not address the theory of breach of contract, nor do we.

C.

---

[2]While the defendant claims he informed the salesman with whom he was working of the damage to the vehicle, he also acknowledged that, as of the trial of this matter, the salesman was deceased; therefore, there was no one to corroborate the defendant's testimony on this matter. Because the trial court found the defendant liable to the plaintiff on the basis of negligent misrepresentation, the trial court obviously did not lend any credence to this testimony. *See Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991) (holding that witness credibility is a matter singularly within the province of the trial court).

Next, the defendant argues that, in the event he is found to be liable to the plaintiff, the trial court erred in failing to reduce the amount of damages awarded to the plaintiff due to the plaintiff's failure to mitigate. Our thorough review of the record does not show that the defendant raised this issue in the trial court. It is well-settled that issues not raised before the trial court cannot be raised for the first time on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991). We will not discuss this issue further.

D.

The defendant next contends that, if he is found to be liable to the plaintiff with respect to his response to the "reconstructed" question, then the trial court erred in failing to find Hoese and East Gate equally liable to the defendant for their failure to disclose the condition of the title.

With respect to Hoese, he sold the vehicle in its *wrecked condition* to East Gate on April 5, 1999. Over thirteen months later, the defendant purchased the repaired vehicle from East Gate, and the following month, on June 26, 2000, the new certificate of title was issued, indicating that the vehicle had been rebuilt. As the trial court found, Hoese could not possibly have known at the time he sold the vehicle that at some point in the future the state of Tennessee would brand the vehicle as rebuilt. Furthermore, Hoese cannot be liable for a failure to communicate the condition of the vehicle when it was in the same obvious damaged condition when he sold it as it had been when he received it. There is no error in the trial court's ruling as to Hoese.

Likewise, the trial court did not err in finding that East Gate had no liability to the defendant. East Gate sold the vehicle to the defendant "as is" with no warranty and with full disclosure of all damage to and repairs of the vehicle. Like Hoese, East Gate did not know, at the time it sold the vehicle to the defendant, that the vehicle would be branded as rebuilt by the state of Tennessee one month later. We find that East Gate made all of the appropriate disclosures to the defendant as to the damage to the vehicle and the repairs undertaken by it and that East Gate cannot be held liable for failing to disclose the condition of the title when the new title was not in its possession when the vehicle was sold to the defendant.

E.

Finally, the defendant asserts that the trial court erred in awarding attorney's fees to the plaintiff, Hoese, and East Gate, as the court did not specifically find that the defendant violated the TCPA. The TCPA provides that, once a trial court finds the Act has been violated, the court may award the plaintiff "reasonable attorney's fees and costs." Tenn. Code Ann. § 47-18-109(e)(1) (2001). Further, if the trial court finds that an action brought under the TCPA "is frivolous, without legal or factual merit, or brought for the purpose of harassment," the court may award attorney's fees and costs to the party burdened by the institution of the action. Tenn. Code Ann. § 47-18-109(e)(2).

In the instant case, the defendant is correct that, while the trial court awarded attorney's fees to the plaintiff, Hoese and East Gate, the court never articulated the basis for such an award. In fact,

the trial court focused on "negligent misrepresentation." The trial court's silence with respect to the TCPA requires that we remand this case for a determination on this issue. If, on remand, the trial court finds that the award of attorney's fees to the plaintiff is based upon a violation of the TCPA, and that the awards of fees to Hoese and East Gate is pursuant to the TCPA and premised upon the defendant's counterclaim being "frivolous, without legal or factual merit, or brought for the purpose of harassment," then we find that the award of attorney's fees to each of the three parties should stand. If, on the other hand, the award of fees is based upon a common law theory of negligent misrepresentation, we find that the award of all attorney's fees is improper and must be reversed. *See **Pullman Standard, Inc. v. Abex Corp.***, 693 S.W.2d 336, 338 (Tenn. 1985) (holding that "attorneys' fees are not recoverable in the absence of a statute or contract specifically providing for such recovery, or a recognized ground of equity"). Since we cannot determine whether the fee awards were based on a violation of the TCPA or, rather, on the basis of common law violations, a remand for the trial court to state the basis of the award is necessary.

As to the award of attorney's fees to East Gate, the defendant argues that such an award was improper in any event, as East Gate did not specifically request an award of attorney's fees. In his third-party complaint, the defendant alleged that East Gate violated the TCPA. As we have previously stated, the Act permits a trial court to award attorney's fees and costs to the party against whom a TCPA action is brought, if the action is found to be "frivolous, without legal or factual merit, or brought for the purpose of harassment." We therefore conclude that the defendant "was effectively put on notice" that East Gate was entitled to "all relief authorized under the [TCPA], including attorney's fees and costs." *See **Killingsworth v. Ted Russell Ford, Inc.***, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002). A consequence of a suit *under the TCPA* that is "frivolous, without legal or factual merit, or brought for the purpose of harassment" is a possible imposition of fees against the party asserting such claim. We find East Gate's failure to request attorney's fees in its pleadings is not fatal to its recovery of them, in the event the trial court finds that the award was made pursuant to the TCPA.

V.

By way of a separate issue, Hoese requests that we award him his attorney's fees on appeal. We hold that Hoese is entitled to collect the fees associated with defending this appeal, if, *and only if*, the trial court determines on remand that the award of attorney's fees to Hoese at the trial court level was based upon the TCPA. In that event, we direct the trial court to ascertain a reasonable amount of attorney's fees to award to Hoese for this appeal.

VI.

The award of fees to the plaintiff, Hoese, and East Gate is vacated pending further proceedings in the trial court. In all other respects, the trial court's judgment is affirmed. This case is remanded to the trial court for further proceedings consistent with this opinion and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Doug Bolinger.

_____
CHARLES D. SUSANO, JR., JUDGE